NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-208


STATE OF LOUISIANA

VERSUS

J.A.M.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-311-2008
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Oswald A. Decuir, and Marc T. Amy, Judges.


AFFIRMED.


David W. Burton
District Attorney
36th Judicial District Court
James R. Lestage
Assistant District Attorney
P. O. Box 99
DeRidder, LA 70634
(337) 463-5578
COUNSEL FOR APPELLEE:
    State of Louisiana

**Mitchel M. Evans II**
**Attorney at Law**
**416 North Pine Street**
**DeRidder, LA 70634**
**(337) 462-5225**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **J.A.M.**

**Mitchel M. Evans II**
**Attorney at Law**
**416 North Pine Street**
**DeRidder, LA 70634**
**(337) 462-5225**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **J.A.M.**

**DECUIR, Judge.**

On March 28, 2008, Defendant, J.A.M.[1], was charged with attempted aggravated rape in violation of La.R.S. 14:27 and 14:42. His counsel requested the appointment of a sanity commission, and three months later, Defendant was found to be mentally incompetent to proceed. He was placed in the custody of the Louisiana Department of Health and Hospitals for rehabilitation and "restoration of competency" treatment.

Over the next three years, the trial court rendered several findings that the seventeen-year-old Defendant lacked the capacity to proceed to trial. Defendant's commitment to the mental health system continued until February 2011 when the court re-appointed a sanity commission and the State moved for a competency hearing. Based on the commission's reports which indicated both physicians felt the Defendant was competent to proceed to trial, the State moved to fix the matter for trial, and a trial date was scheduled. Although the trial court did not expressly make a determination that the Defendant was competent to proceed to trial, its actions in moving forward to trial indicate that it found the Defendant competent to proceed. *See State v. Bonicard,* 98-665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, *writ denied*, 99-2632 (La. 3/17/00), 756 So.2d 324.

On September 19, 2011, Defendant entered a plea of guilty to the responsive charge of attempted forcible rape, in violation of La.R.S. 14:42.1 and 14:27. A sentencing hearing was held, and Defendant was sentenced to the maximum twenty years at hard labor without benefit of probation, parole, or suspension of sentence. The court's order included a provision that Defendant receive sex offender counseling while incarcerated.

---

[1] Under the authority of La.R.S. 46:1844W, this court will use a defendant's initials when there is a familial relationship between the defendant and the victim.

In this appeal, Defendant contends the trial court failed to properly apply the sentencing guidelines articulated at La.Code Crim.P. art. 894.1 and failed to particularize the sentence to the unique circumstances of this case. For the following reasons, we affirm the sentence imposed by the trial court.

The record before us includes evidence of Defendant's long-standing psychiatric and medical problems, for which his mother consistently sought treatment. As a young teenager, Defendant was found to be bipolar and was diagnosed with attention deficit hyperactivity disorder. He repeated the fifth grade and was expelled during his eighth grade year. His IQ was variously reported as 71, 82, and 84. He attended an alternative school until eleventh grade, when he was arrested for the instant offense. Defendant was prescribed different medications including Abilify, Risperdal, Zoloft, and Adderall. When he was sixteen, doctors determined Defendant had low testosterone levels, and he was diagnosed with Klinefelter's Syndrome, a chromosomal abnormality resulting in an extra X chromosome. The syndrome often includes growth delays, cognitive difficulties, and sexual problems. Doctors were perplexed by Defendant's condition because he had a history of sexual acting out and sexual aggression; normally, low testosterone and Klinefelter's would suppress sexual thoughts and activity. Shortly after the initiation of testosterone supplements, Defendant committed the crime to which he has now pled guilty. The record shows, however, that Defendant committed other acts of sexual aggression for some years before he was placed on hormone therapy.

The victim in this case is Defendant's mother. Over several years, Defendant expressed a sexual interest in his mother. He would write notes to her, spy on her, and touch her inappropriately. She would respond by slapping him, getting away from him, or calling out to another family member. One day,

2

Defendant approached his mother while holding a kitchen knife. He told her to take her clothes off and threatened her with the knife. She was able to extricate herself from harm and ran next door to call the police. She felt she had exhausted all other options and wanted her son to get help.

After Defendant was arrested, he was evaluated by numerous doctors who concluded that he was likely to commit a similar offense if released from a custodial environment. In fact, in the course of the sanity commission proceedings, Defendant disclosed that he had committed sexual acts with his younger brother, age seven at the time, and two female cousins, ages seven and sixteen. He also revealed he had been raped by an older male relative when he was fourteen. While in the State's custody, Defendant continued to exhibit inappropriate sexual thoughts. He recorded fantasies about his mother, his female therapist, and others. He left a voicemail message for his therapist expressing his love for her. One physician explained to the court that Defendant would become noticeably alert and interested when sexual behavior was addressed.

During the three-year period Defendant was in the State's custody prior to his guilty plea, he did not receive sex offender treatment. Rather, he received therapy designed to restore his mental competency to stand trial. Therefore, at the time of sentencing, Defendant had made no progress in overcoming his sexual problems, and the therapists reported that the risk of another offense was "moderate to high" and "considerable." One opined that his probable victim would be someone young or weak, potentially another family member to whom Defendant has easy access. The therapists thought the Defendant was in need of treatment in a custodial environment. The trial court had great sympathy for Defendant's mother, as do we, as she was under the impression that Defendant was receiving appropriate sex offender therapy during those years and would be able to

3

return home and live with the family. The court explained to her, however, that Defendant was not eligible for treatment by the State for his specific problems until he was convicted of a crime.

At the sentencing hearing, the trial court listened to testimony from Defendant's mother and concluded that she now minimizes Defendant's actions and wants only to see him return home. Although not fully documented in the record, it is apparent that Defendant violated the conditions of his probation when he was out on bond in September 2011. His mother testified that she allowed Defendant, actually urged Defendant, to come to their house to retrieve some clothes while she and her younger children were there. The court stated:

> While at one time your mother sought help for you, she has now chosen to minimize your actions to the detriment of the younger siblings in your home, her home. If I were to place you on probation, and give you the same and/or more conditions of probation, this Court has no assurance, based on your previous actions and those of the victim, you[r] mother, that anyone would enforce the conditions. You could not even comply with these conditions for [a] week, and therefore any probation would appear to be the wrong choice, not only for you but more importantly for the safety and well-being of the minor children and other individuals you would come in contact with if allowed to be placed on probation.
>
> This Court is not willing to take that risk, especially considering the young ages of your siblings, 6 and 11. . .
>
> The Court finds this a great concern given the opportunity for re-offense and the total disregard by your family and yourself to comply with the boundaries and conditions imposed on you … while out on bond.

Defendant was then sentenced to the maximum of twenty years.

In reviewing a sentence for excessiveness, we are governed by the manifest error standard of review: "Absent a showing of manifest abuse of that discretion, the sentence imposed should not be set aside as excessive. *State v. Williams*, 2003-3514 (La. 12/13/04), 893 So.2d 7." *State v. Hicks*, 42,427, p. 4 (La.App. 2 Cir. 10/24/07), 968 So.2d 307, 311. In *State v. Walker*, 96-112, pp. 3-4 (La.App. 3 Cir.

4

6/5/96), 677 So.2d 532, 534-35, *writ denied*, 96-1767 (La. 12/6/96), 684 So.2d 924, this court explained:

> Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. *State v. Sepulvado*, 367 So.2d 762 (La.1979); *State v. Naquin*, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981); *State v. Everett*, 530 So.2d 615 (La.App. 3 Cir.1988), *writ denied*, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *State v. Howard*, 414 So.2d 1210 (La.1982).

We find the trial court in this case did not abuse its discretion in sentencing Defendant to the maximum of twenty years. The court was deeply concerned with the safety of Defendant's family members, given the psychiatric reports that Defendant is at "considerable" risk of committing another similar crime. Also considered was the fact that Defendant and his mother were unable to abide by previous probationary conditions, an act which gave the impression the family does not take Defendant's problems seriously. These factors show that the trial court undeniably particularized the sentence to the unique circumstances of this defendant; for it may well be that another twenty-one-year-old first felony offender may not have received a maximum sentence in a case with different facts. Indeed, the court further particularized the sentence by ordering the Defendant receive sex offender counseling while incarcerated.

For the above and foregoing reasons, the Defendant's sentence of twenty years at hard labor and the receipt of sex offender treatment is hereby affirmed.

**AFFIRMED.**

5

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal, Rule 2–16.3.